**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| Globalrose.com LLC, Perdomo Distributor, LLC, Trade ACE LLC, Enocapsule Inc, Cosmos Granite (West) LLC, Cosmos Granite (South West) LLC, Linstol USA, LLC, Product Protection Solutions Inc., Tracy and Hanna LLC, Essence Corp., IBUYFLOWERS LLC, and Custom Pet LLC<br><br>Plaintiffs,<br>v.<br><br>the UNITED STATES OF AMERICA; DONALD J. TRUMP, *in his official capacity as President of the United States*; EXECUTIVE OFFICE OF THE PRESIDENT; UNITED STATES CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, *in his official capacity as Commissioner of United States Customs and Border Protection,*<br><br>Defendants. | Court No. 26-03878 |

**COMPLAINT**

1. Plaintiffs, Globalrose.com LLC, Perdomo Distributor, LLC, Trade ACE LLC, Enocapsule Inc, Cosmos Granite (West) LLC, Cosmos Granite (South West) LLC, Linstol USA, LLC, Product Protection Solutions Inc., Tracy and Hanna LLC, and Essence Corp., IBUYFLOWERS LLC, and Custom Pet LLC ("Plaintiffs") are importers, as defined in 19 C.F.R 101.1, of merchandise into the U.S. subject to the challenged duties.

2. Beginning in February of 2025, through a series of executive orders, the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiffs source their imports and transport

imports on behalf of their customers. Plaintiffs are responsible for paying these tariffs on the imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id*. at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources*, Plaintiffs seek for themselves a full refund from Defendants of all IEEPA duties Plaintiffs have paid to the United States.

**PARTIES**

1. Plaintiff Globalrose.com LLC ("Globalrose.com") is a Florida-based business. In addition to this legal name, Globalrose.com may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): GLOBALROSE COM LLC. Globalrose.com imported fresh cut flowers from Colombia and Ecuador. Globalrose.com is therefore an interested party pursuant to 28 U.S.C § 2631(i).

2. Plaintiff Perdomo Distributor, LLC ("Perdomo") is a Florida-based business. In addition to this legal name, Perdomo may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial

Environment ("ACE"): PERDOMO DISTRIBUTOR LLC. Perdomo imported parts of air conditioning machines from China. Perdomo is therefore an interested party pursuant to 28 U.S.C § 2631(i).

3. Plaintiff Trade ACE LLC ("Trade ACE") is a Florida-based business. Their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE") is TRADE ACE LLC. Trade ACE imported LED video wall panels from China. Trade ACE is therefore an interested party pursuant to 28 U.S.C § 2631(i).

4. Plaintiff Enocapsule Inc ("Enocapsule") is a business based in Quebec, Canada. Their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE") is ENOCAPSULE INC. Enocapsule imported PVC and Polylam capsules for bottles from Canada. Enocapsule is therefore an interested party pursuant to 28 U.S.C § 2631(i).

5. Plaintiff Cosmos Granite (West) LLC ("Cosmos Granite (West)") is a Washington-based business. In addition to this legal name, Cosmos Granite (West) may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): COSMOS GRANITE WEST LLC. Cosmos Granite (West) imported stone labs and sinks from Brazil, India, Vietnam, Malaysia, Thailand, Italy, Spain, Turkey, South Africa, and China. Cosmos Granite (West) is therefore an interested party pursuant to 28 U.S.C § 2631(i).

6. Plaintiff Cosmos Granite (South West) LLC ("Cosmos Granite (South West)") is a Washington-based business. In addition to this legal name, Cosmos Granite (South West) may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): COSMOS GRANITE

SOUTHWEST LLC. Cosmos Granite (South West) imported stone labs and sinks from Brazil, India, Vietnam, Malaysia, Thailand, Italy, Spain, Turkey, South Africa, and China. Cosmos Granite (South West) is therefore an interested party pursuant to 28 U.S.C § 2631(i).

7. Plaintiff Linstol USA, LLC ("Linstol") is a Florida-based business. Their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE") is LINSTOL USA, LLC. Linstol imported airline passenger comfort products, headsets, earbuds, amenity kits, blankets, disposable cups, air sickness bags, etc., from China, Italy, India, Thailand, and Cambodia. Linstol is therefore an interested party pursuant to 28 U.S.C § 2631(i).

8. Plaintiff Product Protection Solutions Inc. ("PPS") is a North Carolina-based business. In addition to this legal name, PPS may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): PRODUCT PROTECTION SOLUTIONS INC. PPS imported theft prevention security equipment from China, Vietnam, Hong Kong, and the European Union (Netherlands, Germany, Spain, Hungary, Czech Republic, Denmark). PPS is therefore an interested party pursuant to 28 U.S.C § 2631(i).

9. Plaintiff Tracy and Hanna LLC ("Tracy and Hanna") is a California-based business. Their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE") is TRACY AND HANNA LLC. Tracy and Hanna imported wood furniture from China and Vietnam. Tracy and Hanna is therefore an interested party pursuant to 28 U.S.C § 2631(i).

10. Plaintiff Essence Corp. ("Essence") is a Florida-based business. In addition to this legal name, Essence may also have used the following variants of their name as importer of record

in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): ESSENCE CORP. Essence imported fragrances and cosmetics from Turkey, Belgium, China, Colombia, Germany, Spain, France, Hong Kong, Ireland, Italy, Japan, South Korea, Mexico, the Netherlands, Poland, Portugal, Sweden, and Tunisia. Essence is therefore an interested party pursuant to 28 U.S.C § 2631(i).

11. Plaintiff IBUYFLOWERS LLC ("IBUYFLOWERS") is a New York-based business. Their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE") is IBUYFLOWERS LLC. IBUYFLOWERS imported cut flowers from Ecuador and Colombia. IBUYFLOWERS is therefore an interested party pursuant to 28 U.S.C § 2631(i).

12. Plaintiff Custom Pet LLC ("Custom Pet") is a Florida-based business. In addition to this legal name, Custom Pet may also have used the following variants of their name as importer of record in U.S. Customs and Border Protection's Automated Commercial Environment ("ACE"): CUSTOM PET INC. Custom Pet imported pet treats from Colombia. Custom Pet is therefore an interested party pursuant to 28 U.S.C § 2631(i).

13. Defendant Donald J. Trump is the President of the United States and is sued in his official capacity.

14. Defendant Executive Office of the President is the federal agency that oversees core functions of the executive branch, including the Office of the United States Trade Representative. It is headquartered in Washington, D.C.

15. Defendant United States of America is the federal government of the United States of America.

16. Defendant United States Customs and Border Protection ("CPB") is a federal agency

and a component of the Department of Homeland Security, responsible for, among other things, securing ports of entry and collecting tariffs on imported goods. It is headquartered in Washington, D.C.

17. Defendant Rodney Scott is the Commissioner of United States Customs and Border Protection. He is sued in his official capacity.

## TIMELINESS OF THIS ACTION

18. Plaintiffs commenced this action by filing a summons and complaint with the Court on September 4, 2026. As this matter has been commenced within two years of the action of the United States, such action satisfies the timeliness requirement in accordance with 19 U.S.C. § 1621.

## STANDING

19. To establish a standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Plaintiffs are harmed by the challenged tariff action because each Plaintiff directly imported goods from China and other countries subject to the Challenged Orders, and each thus must pay additional tariffs to the federal government because of the Challenged Orders and corresponding revisions to the HTSUS. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("being forced to pay" money to the government "causes a real and immediate economic injury"). Declaratory and injunctive relief will redress these injuries because Plaintiffs will no longer be required to pay the tariff or make harmful changes to their business operations to account for increased costs.

## GENERAL PLEADINGS

### I. The President orders a series of tariffs, invoking IEEPA for his authority.

#### A. The IEEPA duties

20. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

21. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, Imposing Duties To Address the Situation at Our Southern Border (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

22. The executive order directed at Canada, Executive Order 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

23. Finally, the executive order directed at China, Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% ad valorem tariff on products from China imported into the United States on top of existing duties.

24. Four days later, on February 5, 2025, the President issued another order, Executive Order 14,200, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

25. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar.

7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

26. On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issued Executive Order 14,257, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

27. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

28. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

29. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

30. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections, et al. v. Trump*, et al., No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting en banc, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

31. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

32. CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, Ending Collection of International Emergency Economic Powers Act Duties (Feb 22, 2026).[1]

33. By this complaint, Plaintiffs seek relief as a result of all duties they have paid or will pay to the United States arising from the IEEPA executive orders ("Challenged Tariff Orders").

**B. CBP's implementation of the tariffs**

34. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

[1] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

35. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id*.

36. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

37. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

38. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

### C. Liquidation

39. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

40. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

41. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

42. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

43. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

44. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

45. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. See 19 U.S.C. § 1514.[2] But not all liquidations are protestable: where CBP acts in a ministerial capacity (i.e., without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

46. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("AGS"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

47. Contrary to the assertions made to the Court, the President has publicly stated that he intends to contest refunds and expects that they will be delayed for an extended period of years.

## II. The Supreme Court has held the IEEPA duties are not authorized

48. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

49. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

50. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

51. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See*

*Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), cert. granted before judgment, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

52. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[3]

**III. Plaintiffs paid IEEPA duties.**

53. As of the date of this complaint, Plaintiffs have paid IEEPA duties imposed by the Challenged Tariff Orders.

54. The goods Plaintiffs import into the United States that are subject to IEEPA tariffs entered the United States under new HTSUS codes from foreign countries.

55. Plaintiffs have paid IEEPA duties on numerous entries.

IV. The CBP Refund Process

56. U.S. Customs and Border Protection has established a CAPE process through which importers can request a refund of certain CAPE duties. The CAPE process requires importers provide detailed information, requires that in order for an entity have the ability to receive a refund, such entity must have an ACH account, the CAPE process only provides for refunds via the liquidation process, the CAPE process has not addressed the refund of IEEPA duties on type 3 entries, and CBP has applied offsets to such refunds.

[3] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

## COUNT I

## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

57. Plaintiffs incorporate paragraphs 1-56 above by reference.

58. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

59. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id*. at 21.

60. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

61. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

62. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law.

**COUNT II**

**THE PRESIDENT HAS NO AUTHORITY TO REFUSE TO REFUND UNLAWFUL DUTIES**

63. Plaintiffs incorporate paragraphs 1-56 above by reference.

64. The IEEPA duties have been declared to be unlawful and that the President had no authority to withhold refunds.

65. The importers paid these unlawful duties at the time of entry with the expectation that such duties would be refunded.

66. The importers modified their business practices, including reducing profits and otherwise adjusting to these duties and their ongoing operations were harmed. The importers are the parties who paid the duties and are entitled to the refunds.

**COUNT III**

**THE REFUND PROCESS IS UNLAWFUL**

67. Plaintiffs incorporate paragraphs 1-56 above by reference.

68. The CAPE process established by CBP places a number of restrictions on the refund of duties including limiting refunds to liquidation.

69. The CAPE process has not established a procedure for refunds for Type 03 entries. This has deprived such importers of their refunds of unlawful IEEPA duties tendered with type 03 entries.

70. The CAPE process places restrictions on the refund of monies, including required participation in certain government payment systems. Such requirement is unlawful and limits the ability of plaintiffs to recover unlawfully collected monies.

71. The CAPE process includes offsets, thereby depriving plaintiffs of the ability of receiving the full amount of unlawfully collected monies.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

a) Sustain Counts 1 to 3 of this complaint.

b) order CBP to reliquidate any entries that have been liquidated with IEEPA duties without the final collection of such duties or in the alternative issue a money judgment for the amount of such duties;

c) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties or in the alternative issue a money judgment for the amount of such duties;

d) order the United States to refund to Plaintiffs the duties collected from Plaintiffs on all entries subject to IEEPA duties, with interest as provided by law;

e) order the United States to refund to Plaintiffs the IEEPA duties collected from plaintiffs on Type 03 entries without waiting for completion of the liquidation process.

f) order the United States to immediately refund such amounts and not withhold from such refunds any offsets;

g) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

h) grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ David Craven
David Craven
Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
773 709-8506

/s/ Jennifer Diaz
Jennifer Diaz
Diaz Trade Law PLLC
12700 Biscayne Boulevard, Suite 401
North Miami, FL 33181
Tel. 305-456-3830
Jen@diaztradelaw.com

*Counsel for Plaintiffs*

Dated: September 4, 2026